UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

MARCO BOYKIN,

                Petitioner,                      16 CV 4185 (CM)

-against-                                    S11 10 CR 391-61 (CM)

UNITED STATES OF AMERICA,

                Respondent.

----------------------------------------------------------X

ORDER DENYING MOTION FILED PURSUANT TO 28 U.S.C. § 2255

McMahon, C.J.:

Marco Boykin was named in fifteen counts of a thirty-count superseding indictment, S11 10 CR 391 (CM)– three of them capital counts. Boykin ultimately pleaded guilty to three of those counts: Racketeering Conspiracy, in violation of 18 U.S.C. § 1962(d) (Count Two); Narcotics Conspiracy, in violation of 21 U.S.C. § 846 (Count Eighteen); and using and carrying a firearm during and in relation to, and possessing a firearm in furtherance of, the conspiracy to commit murder and murder charged in Counts Three and Four, which firearm was discharged, and aiding and abetting the same, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) & (c)(1)(C)(i) and 2. (Count Twenty-Five).

Boykin was sentenced to a term of 335 months' imprisonment (235 months' on Count Two, 120 months' on Count Eighteen, those sentences running concurrent; and 120 months' on Count Twenty-Five, running consecutive to the aggregate 235 months' imposed on Counts Two and Eighteen). He is currently serving his sentence in a United States Penitentiary; his projected release date is 2037.

1

Before the Court is Boykin's motion filed pursuant to 28 U.S.C. § 2255, asking the Court to set aside his conviction and sentence on Count Twenty-Five (the § 924(c) firearms offense), in light of the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015) and its progeny, most particularly, *United States v. Davis*, 139 S. Ct. 2319 (2019).[1] In *Davis*, the Supreme Court held that § 924(c)(3)(B)—commonly referred to as the "risk-of-force clause" or "residual clause" of Section 924(c)'s definition of a crime of violence—was unconstitutionally vague. *United States v. Davis*, 139 S. Ct. at 2336. Boykin argues that, since the risk of force clause is unconstitutional, "his conviction for participation in a racketeering conspiracy under 18 U.S.C. § 1962(c) can no longer qualify as a 'crime of violence' to support his conviction for discharging a firearm in the commission of a 'crime of violence.'" (Defendant's Motion at 1).

The Government asks the Court to deny Boykin's motion on the merits, as well as for procedural default, since Boykin waived his right to appeal in his plea agreement, and no appeal was ever filed.

It is not necessary to address the Government's procedural attack on the petition, because Boykin's *Johnson/Davis* claim fails on its merits.

While Boykin is of course correct that § 924(c)(3)(**B**) was held by the Supreme Court to be unconstitutionally vague, his argument fails, nonetheless. That is because Boykin's § 924(c) conviction was not predicated on the racketeering conspiracy with which he was charged; it was predicated on two other crimes: (1) conspiracy to murder, as charged in Count Three, and (2) the actual murder of Lamont Young in aid of racketeering, as charged in Count Four. *See* Indictment S11 10 CR 391 (CM). And while it is unclear whether *Johnson/Davis* effectively excludes all

---

[1] The Court had held Boykin's petition in abeyance, along with the bulk of this Court's "*Johnson* petitions," while cases addressing the scope of *Johnson* wended their way through the appellate courts.

conspiracies—even a conspiracy to murder—from serving as a predicate crime of violence for a § 924 (c) firearms conviction, murder itself is a crime of violence under § 924(c)(3)(A), the constitutionality of which was not affected by the ruling in *Davis*. Contrary to Boykin's strained argument, the crime of murder has always been understood to be a crime of violence– indeed, the ultimate crime of violence.

Background

Marco Boykin was one of the leaders of the Bloods in Newburgh, engaging in, assisting, and directing frequent violence, up to and including murder, helping to flood the streets of Newburgh, New York, with crack cocaine, and engaging in other crimes in furtherance of the Bloods enterprise. The charges against him and his ultimate convictions stem from his gang activities.[2] He was named in 15 of the 30 counts of indictment S11 10 Cr. 391 (CM), which charged him and others with:

> (1) engaging in a racketeering enterprise, in violation of 18 U.S.C. §§ 1961 and 1962(c) (Count One);
>
> (2) participating in a racketeering conspiracy, in violation of 18 U.S.C. § 1962(d) (Count Two);
>
> (3) participating in conspiracy to murder Lamont Young in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5) (Count Three);
>
> (4) murdering Lamont Young in aid of racketeering, and aiding and abetting the same, in violation of 18 U.S.C. §§ 1959(a)(1) and 2 (Count Four);
>
> (5) participating in a conspiracy to murder Tyrik Legette in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5) (Count Five);
>
> (6) murdering Tyrik Legette in aid of racketeering, and aiding and abetting the same, in violation of 18 U.S.C. §§ 1959(a)(1) and 2 (Count Six);

---

[2] The readers familiarity with the underlying facts of this case is presumed. For a comprehensive description of the Bloods gang activity in Newburgh, and Marco Boykin's involvement in the gang, the reader is referred to the Government's submission in connection with the Marco Boykin sentencing, *United States v. Marco Boykin*, 10 CR 391 (CM), ECF Document #1331.

3

(7) participating in a conspiracy to murder members of a rival gang known as the "Crips" in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5) (Count Eleven);

(8) assaulting and attempting to murder members of a rival gang known as the "Crips" in aid of racketeering, and aiding and abetting the same, in violation of 18 U.S.C. §§ 1959(a)(3) & (a)(5) and 2 (Count Twelve);

(9) attempting to assault and murder members of a rival gang known as the "Latin Kings" in aid of racketeering, and aiding and abetting the same, in violation of 18 U.S.C. §§ 1959(a)(5) & (a)(6) and 2 (Count Fifteen);

(10) participating in a conspiracy to distribute and possess with intent to distribute 280 grams and more of crack cocaine, in violation of 21 U.S.C. § 846 (Count Eighteen);

(11) using and carrying firearms during and in relation to, and possessing firearms in furtherance of, the crack-cocaine-distribution conspiracy charged in Count Eighteen, which firearms were discharged, and aiding and abetting the same, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2 (Count Twenty-One);

(12) using and carrying a firearm during and in relation to, and possessing a firearm in furtherance of, the conspiracy to commit murder and assault and attempted murder charged in Counts Eleven and Twelve, which firearm was discharged, and aiding and abetting the same, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) & (c)(1)(C)(i) and 2 (Count Twenty-Three);

(13) using and carrying a firearm during and in relation to, and possessing a firearm in furtherance of, the conspiracy to commit murder and murder charged in Counts Three and Four, which firearm was discharged, and aiding and abetting the same, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) & (c)(1)(C)(i) and 2 (Count Twenty-Five);

(14) using and carrying a firearm during and in relation to, and possessing a firearm in furtherance of, the conspiracy to commit murder and murder charged in Counts Three and Four, which firearm was discharged, and aiding and abetting the same, thus causing the death of Lamont Young, in violation of 18 U.S.C. §§ 924(j) and 2 (Count Twenty-Six);

(15) using and carrying firearms during and in relation to, and

possessing firearms in furtherance of, the assault and attempted murder charged in Count Fifteen, which firearm was discharged, and aiding and abetting the same, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) & (c)(1)(C)(i) and 2 (Count Twenty-Seven).

Three of the counts—Counts Four, Six, and Twenty-Six—were capital counts. Two of the counts—Counts Four and Six—carried mandatory life sentences.

Boykin ultimately pleaded guilty, pursuant to a plea agreement, to Count Two (racketeering conspiracy), Count Eighteen (crack-cocaine distribution conspiracy), and Count Twenty-Five (the § 924(c) firearms charge). The Indictment predicated Count Twenty Five, not on the racketeering conspiracy charged in Count Two, as defendant contended in his original motion, but on the conspiracy to murder Lamont Young (charged in the indictment as Count Three) and on the actual murder of Lamont young (charged in the indictment as Count Four).

As part of his plea, Boykin also admitted to participating in the murder of Tyrik Legette, which was charged as a part of the racketeering enterprise that was the Newburgh Bloods (Count One), and to the crime of attempted murder of members of the rival Crips gang– all as part of his participation in the racketeering conspiracy charged in Count Two. (Plea Agreement 1 n.1). However, that conspiracy and its underlying acts were not the predicate for the 924(c) charged in Count Twenty-Five.

Boykin also agreed that:

Should the conviction(s) following the defendant's plea(s) of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the Government has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

(Plea Agreement 10). Thus, if Boykin were to "win" his motion (that is, have his conviction and sentence on Count Twenty-Five vacated and that count dismissed), he would be facing possible prosecution on the counts the Government agreed to forgo in the plea agreement, including the three capital counts (Counts Four, Six and Twenty-Six) and the two counts carrying mandatory life sentences (Counts Four and Six).[3]

In his plea allocution, Boykin made clear that Count Twenty-Five was predicated on both the actual murder and the conspiracy pursuant to which the murder plan was hatched and carried out:

> THE COURT: Did you have any involvement in the murder or attempted murder of others for purposes of assisting the Bloods' business in Newburgh?
>
> THE DEFENDANT: Yes.
>
> THE COURT: In the course of any of those incidents involving the murder or attempted murder of others on behalf of the Bloods, did you either carry, use, discharge or assist others in carrying, using or discharging a firearm?
>
> THE DEFENDANT: Yes.
>
> MR. FREEMAN: Your Honor, I think it's important to describe the factual predicate for that particular charge. Mr. Boykin did not carry, did not use a gun. The government's theory as to Mr. Boykin is that aiding and abetting theory applies in this case, as Mr. Maimin stated to the court earlier. Specifically, Mr. Boykin was aware that a shooting could take place, and it in fact did take place. And Mr. Boykin was involved in clearing the area, in other words, making sure that he and other potential victims were moved out of the way but that other people who had guns might take part in the shooting, which did occur and did result in the death of an individual.
>
> THE COURT: Well, let me ask you, Mr. Boykin, did you in fact participate, as your lawyer has said, in clearing a particular area of Newburgh in anticipation of the shooting of the intended victim?
>
> THE DEFENDANT: Yes.

---

[3] The *Davis* Court recognized the peril movants might face in light of its ruling: "[D]efendants whose § 924(c) convictions are overturned by virtue of today's ruling will not even necessarily receive lighter sentences: As this Court has noted, when a defendant's § 924(c) conviction is invalidated, courts of appeals 'routinely' vacate the defendant's entire sentence on all counts 'so that the district court may increase the sentences for any remaining counts' if such an increase is warranted." *Davis* at 2336, quoting *Dean v. United States*, 137 S. Ct. 1170, 1176 (2017).

THE COURT: And at the time were you aware that that victim was being targeted?

THE DEFENDANT: Yes.

THE COURT: And was your purpose in clearing the area to ensure that only the victim would be shot? Or was there some other purpose to it?

THE DEFENDANT: The way the situation went down, I didn't know the individual was going to get killed, so when it went down it wasn't just the victim that was in there.

THE COURT: You didn't know that the victim was intended to be killed?

THE DEFENDANT: No.

MR. MAIMIN: Your Honor, may I speak to Mr. Freeman for a moment?

THE COURT: Yes, you may.

MR. FREEMAN: Your Honor, my client didn't know that it was going to occur at that particular moment, but he knew it was going to occur, and in fact I believe that he received notice via text that it was going to occur.

THE COURT: Is that in fact the case, Mr. Boykin?

THE DEFENDANT: Yes, sir.

THE COURT: And so in clearing the area as it has been described, your purpose was to assist in the carrying out of this killing?

THE DEFENDANT: Yes.

THE COURT: And who was this victim that you are referring to?

THE DEFENDANT: Lamont Young.

THE COURT: Sorry?

THE DEFENDANT: Lamont Young.

(Plea Transcript 21–23). Additionally, as he agreed to do in the Plea Agreement, Boykin admitted to his participation in various additional charged crimes, including specifically the murder of Tyrik Legette. (Plea Transcript 19, 23–25).

### The State of 18 U.S.C. § 924(c)

Section 924(c) of Title 18 criminalizes the use or carrying of a firearm "during and in relation to any crime of violence" that is itself a violation of federal law. 18 § 924(c)(1)(A). The statute defines "crime of violence" in § 924(c)(3), as an offense that is a felony and either:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another [the "force clause" or "elements clause"], or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense ["risk-of-force clause" or the "residual clause"].

18 U.S.C. § 924(c)(3)(A) & (B).

Since the Supreme Court has held "that § 924(c)(3)(B) [the "risk of force clause"] is unconstitutionally vague" (*see Davis*, 139 S. Ct. at 2336), a predicate crime qualifies as a "crime of violence" only if it falls under the force clause, § 924(c)(3)(A); 924(c)(3)(B) has been effectively stricken from the statute.

After *Davis*, it is unclear whether a conspiracy to commit a violent crime could any longer serve as a predicate "crime of violence" for a § 924(c) firearms conviction. Conspiracy to commit a crime violence was traditionally evaluated under the risk of force clause, § 924(c)(3)(B), and qualified as a crime of violence only if the object of the conspiracy was itself a crime of violence under the force clause, § 924(c)(3)(A):

> A conspiracy, by its very nature, is a collective criminal effort where a common goal unites two or more criminals. Such a meeting of the minds enhances the likelihood that the planned crime will be carried out. Thus, when a conspiracy exists to commit a crime of violence ... the conspiracy itself poses a "substantial risk" of violence, which qualifies it under Section 924(c)(1) and Section 924(c)(3)(B) as a crime of violence.

8

*United States v. Patino*, 962 F.2d 263, 267 (2d Cir. 1992) (citation omitted). After *Davis*, the Second Circuit was obliged to vacate a § 924(c) conviction predicated on Hobbs Act robbery conspiracy "because the identification of that crime as one of violence depends on the § 924(c)(3)(B) residual clause definition, which Davis has now pronounced unconstitutionally vague." *United States v. Barrett*, 937 F.3d 126, 128 (2d Cir. 2019).

Can a conspiracy to commit a violent crime ever serve as a predicate for a § 924(c) conviction? Neither the Supreme Court nor the Second Circuit has ruled on this precise question.

Fortunately, it is not necessary in this case to decide whether any and all conspiracies are only violent crimes under the unconstitutional "risk of force" clause. That is because conspiracy to commit murder was not the only predicate for Boykin's 924(c) conviction. There was a second predicate for his plea: the actual murder of Lamont Young, as charged in Count Four of the indictment. Boykin's conviction on Count Twenty-Five survives as long as "substantive" murder qualifies as a crime of violence under the "force clause," § 924(c)(3)(A).

While the question would seem to answer itself—murder is generally thought to be the ultimate crime of violence—Boykin, like several convicted defendants before him, argues not so. Specifically, he argues that murder is not "categorically" a crime of violence under the Penal Law of the State of New York.

To determine whether an offense is a crime of violence, courts employ either a "categorical approach," or a "modified categorical approach." *Mathis v. United States*, 136 S. Ct. 2243, 2248–49 (2016). "The categorical approach is confined to an examination of the legal elements of the state criminal statute to determine whether they are identical to or narrower than the relevant federal statute." *United States v. Jones*, 878 F.3d 10, 16 (2d Cir. 2017). Where the state criminal statute is "divisible," meaning that it "criminalize[s] multiple elements in the alternative[,] ... courts may

9

employ what is known as the modified categorical approach," which permits the court to consult a limited set of approved documents to determine which elements formed the basis of the defendant's conviction. *Id.* The indictment is one such document; the plea colloquy is another. *Rizzuto v. United States*, Nos. 98 Cr. 581 (ERK), 16 Civ. 3557 (ERK), 2019 WL 3219156, *3 (E.D.N.Y. July 17, 2019) (Korman, *J.*).

Under either approach, courts identify "the minimum criminal conduct necessary for conviction under a particular statute," *United States v. Acosta*, 470 F.3d 132, 135 (2d Cir. 2006), and does so by "'look[ing] only to the statutory definitions'—*i.e.*, the elements—of [the] offense[], and not 'to the particular [underlying] facts,'" *Descamps v. United States*, 570 U.S. 254, 261 (2013) (quoting *Taylor v. United States*, 495 U.S. 575, 500 (1990)). A reviewing court "cannot go behind the offense *as it was charged* to reach [its] own determination as to whether the underlying facts" qualify the offense as a crime of violence. *United States v. Hill*, 890 F.3d 51, 55 (2d Cir. 2018) (emphasis added; quotations marks omitted).

While murder is defined by federal law, *see* 18 U.S.C. § 1959(a)(1), what the federal statute criminalizes is behavior that qualifies as "murder" under state law. That is why Count Four alleges that the murder of Lamont Young violated N.Y. Penal Law § 125.25 and N.Y. Penal Law § 20.00.

There are five subdivisions to Section 125.25. "Because Section 125.25 plainly 'criminalizes multiple acts in the alternative, thereby defining multiple crimes, it is considered divisible,'" which makes it appropriate to use the language in the indictment and subsequent plea colloquy in order to determine which subsection applies. *Rizzuto v. United States, supra., quoting United States v. Moore*, 916 F.3d 231, 238 (2d Cir. 2019); citing N.Y. Penal Law § 125.25; *Lanferman v. Board of Immigration Appeals*, 576 F.3d 84, 90 (2d Cir. 2009); *Shepard v. United States*, 544 U.S. 13, 16 (2005); *United States v. Moreno*, 821 F.3d 223, 228–29 (2d Cir. 2016))). The instant indictment

10

alleges that Boykin "did intentionally and knowingly murder, and aided and abetted the murder of, Lamont Young." (S11 Indictment, Count Four). Subsection (1) of Section 125.5 provides: "A person is guilty of murder in the second degree when ... [w]ith intent to cause the death of another person, he causes the death of such person or of a third person ...." N.Y. Penal Law § 125.25(1). Therefore, the relevant section of New York's murder statute is Penal Law § 125.25(1).[4]

The thrust of Boykin's argument is that New York's highest court has held that one form of homicide (manslaughter, not murder) does not categorically qualify as a crime of violence, because one can kill someone else by omission (i.e., without actually applying physical force). The case on which Boykin relies is *People v. Steinberg*, 79 N.Y. 2d 673, 680 (1992), in which "The People's theory, as charged to the jury, was that defendant performed both acts of commission (striking his daughter Lisa) and acts of omission (failure to obtain medical care), each with intent to cause serious physical injury, and that such acts caused Lisa's death." *Steinberg*, 79 N.Y. 2d at 680. In upholding Steinberg's manslaughter conviction, the Court of Appels held that under the "New York Penal Law . . . criminal liability may be based on an omission (*see*, Penal Law§ 15.05), which is defined as the failure to perform a legally imposed duty (Penal Law§ 15.00). Parents have a nondelegable affirmative duty to provide their children with adequate medical care *(Matter of Hofbauer,* 47 N.Y.2d 648, 654-655; Family Ct Act§ 1012 [f] [i] [A]). Thus, a parent's failure to fulfill that duty can form the basis of a homicide charge (*see, People v Flayhart,* 72 N.Y.2d 737; *People v Henson,* 33 N.Y.2d 63)." *Steinberg,* at 680.

---

[4] It bears noting that one of Boykin's co-defendants, his brother, Anthony Boykin, went to trial and was convicted under Count S14-4, for the murder of Lamont Young; the court's charge to the jury defined "murder" under New York State law by reading Section 125.25(1), without objection from any defendant. Obviously, that is the relevant subsection of New York's murder statute.

Boykin is not the first defendant to make this argument, and it has been specifically considered and rejected by the Second Circuit in *United States v. Sierra,* 782 F. App'x 16, 21 (2d Cir. 2019). In *Sierra* the Court of Appeals affirmed a § 924(c) conviction predicated on murder-in-aid-of-racketeering. To Sierra's argument that murder was not a categorical crime of violence under New York law in light of *Steinberg*, the panel said the following: "[Defendant] argues that murder can be committed by omission, and therefore the use of force is not an element of his murder convictions. But that argument is foreclosed by our holding that the 'use of physical force can encompass acts undertaken to cause physical harm, even when the harm occurs indirectly.'" *Sierra,* 2019 WL 3477105, at *3 (quoting *United States v. Hill,* 890 F.3d 51, 60 (2d Cir. 2018). Addressing *Steinberg* directly, the *Sierra* Court went on to say: "An omission can be considered one way of indirectly precipitating a harmful consequence. *Id.* citing *Steinberg,* 79 N.Y.2d at 584, n.2. The Circuit concluded: "It is self-evident that under New York law 'attempted murder is a crime unmistakably involving the use of physical force,'" and, therefore, "[i]t follows that murder is a crime involving the use of such force." *Sierra,* (quoting *United States v. Praddy,* 729 F. App'x 21, 24 (2d Cir. 2018) (internal quotation marks omitted); *United States v. Scott,* 681 F. App'x 89, 94–95 (2d Cir. 2017).

Boykin urges this court to ignore *Sierra, Praddy,* and *Scott* because those cases were all decided by summary order, and a summary order has no precedential effect. But while that may be true, "summary orders......[have] to be deemed some indication of how the Court of Appeals might rule were it to decide the issue in a binding opinion." *Mendez v. Starwood Hotels & Resorts Worldwide, Inc.,* 746 F. Supp. 2d 575, 595 (S.D.N.Y. 2010) (McMahon, *J.*); *see also, e.g., United States v. Tejada,* 824 F. Supp. 2d 473, 475 (S.D.N.Y. 2010) (Marrero, *J.*) ("The Court is not persuaded that it is at liberty not only to disregard but contradict a Second Circuit

12

ruling squarely on point merely because it was rendered in a summary order. Though the application of such holdings is technically circumscribed by the immediate case adjudged, the decisions nonetheless constitute valuable appellate guidance.").

Additionally, the issue before the Circuit in *Sierra*, *Praddy*, and *Scott* was one of law – specifically, whether murder qualified as a categorical crime of violence. "The rationale underlying the Rule [that summary orders are non-precedential] is that such orders, being summary, frequently do not set out the factual background of the case in enough detail to disclose whether its facts are sufficiently similar to those of a subsequent unrelated case to make our summary ruling applicable to the new case." *Jackler*, 658 F.3d at 245. "Implicit in that rationale is that summary orders should be given more weight, where, as here, they address a question of law." *CSL Silicones Inc. v. Midsun Group Inc.*, 14 Civ. 1897 (CSH), 2016 WL 1060189, *7 n.8 (D. Conn. Mar. 15, 2016) (Haight, *J.*).

Finally, it bears note that manslaughter—the crime at issue in *Steinberg* – is not the same crime as murder. Although both are forms of homicide, they have entirely different elements. This, of course, eviscerates any argument that *Steinberg* has any applicability to Boykin's situation.

Boykin also relies on *Chrzanoski v. Ashcroft*, 327 F.3d 188, 195 (2d Cir. 2003), a case in which the Second Circuit had held that, under Connecticut law, an assault offense requiring the intentional causation of injury was not a categorical crime of violence under a different "force" clause—this one found in 18 U.S.C. § 16(a)—because an "injury" can be "caused not by physical force, but by ... deliberate omission." *Chrzanoski*, 27 F.3d at 195. However, as the Circuit has itself recognized, an intervening Supreme Court holding has rendered *Chrzanoski's* continuing validity questionable. In *United States v. Castleman*, 572 U.S. 157, 170 (2014), the

13

justices concluded that it is impossible to cause bodily injury intentionally without applying physical force, and that "the knowing or intentional application of force is a 'use' of force." *Castleman*, 572 U.S. at 170. Going further, and addressing the very point made here by Boykin, the high court ruled unequivocally that even indirect force—such as poisoning or failure to obtain medical care—qualifies as "force" for the purpose of federal force-clause statutes. They concluded, "It is impossible to cause bodily injury without applying force in the common-law sense." *Id.*

In light of *Castleman*, the Second Circuit recently held that the holding in *Chrzanowski* relied on "an understanding of the use of force that has been abrogated by the Supreme Court's [*Castleman*] decision." *Banegas Gomez v. Barr*, 922 F.3d 101, 108 (2d Cir. 2019); *see also Villanueva v. United States*, 893 F.3d 123, 128 (2d Cir. 2018).

After *Castleman*, every Circuit but one has concluded that acts of omission such as withholding food or medicine—the very sort of behavior at issue in *Steinberg*—qualifies as an act of physical force. *See United States v. Peeples*, 879 F.3d 282, 287 (8th Cir. 2018) ("it is the act of withholding food with the intent to cause the dependent to starve to death that constitutes the use of force" under *Castleman*); *United States v. Jennings*, 860 F.3d 450, 459-60 (7th Cir. 2017) (lengthy explanation of why withholding food or medicine from an incapacitated person is a use of force under *Castleman*); *United States v. Waters*, 823 F.3d 1062, 1066 (7th Cir. 2016) ("withholding medicine causes physical harm, albeit indirectly, and thus qualifies as the use of force under *Castleman*"); *see also United States v. Rice*, 813 F.3d 704, 706 (8th Cir. 2016) (relying on *Castleman* and concluding that "intentionally or knowingly ... caus[ing] physical injury" includes the requisite use of force under the Guidelines (alteration in original; citation omitted)); *United States v. Studhorse*, 883 F.3d 1198, 1205 (9th Cir. 2018) (in holding that attempted murder under Washington law qualified as a crime of violence under 18 U.S.C. § 16(a), reaffirming that "'the use of physical force' may not be dissociated

14

from intentionally or knowingly causing physical injury" (quotation marks and citation omitted));
*United States v. Ontiveros*, 875 F.3d 533, 535, 538 (10th Cir. 2017) (concluding that a conviction for Colorado second-degree assault is a crime of violence under the Guidelines, because it is impossible to cause bodily injury without the use of physical force); *United States v. Ovalle-Chun*, 815 F.3d 222, 226 (5th Cir. 2016) ("Impairing a person's physical condition or causing a person substantial pain is consistent with a force violent enough to constitute a crime of violence under U.S.S.G. § 2L1.2"); *United States v. Collins*, 799 F.3d 554, 597 (6th Cir. 2015) ("crimes which require proof of physical injury necessarily have as an element the use, attempted use, or threatened use of physical force against the person of another" within the meaning of the ACCA (quotation marks and citation omitted)). While the Third Circuit has held otherwise, *see United States v. Mayo*, 901 F.3d 218, 227 (3d Cir. 2018), it is a clear outlier and directly contradicts controlling Second Circuit precedent as articulated in *Hill*, 890 F.3d at 58–59, and *Villanueva*, 893 F.3d at 128, as well as in the summary orders in *Sierra*, *Praddy* and *Scott*.

Given the Supreme Court's conclusion that the "intentional causation of bodily injury necessarily involves the use of physical force," *id.* at 169, it is impossible not to conclude that the intentional causation of death, as required by N.Y. Penal Law § 125.25(1), necessarily involves the use of physical force.

Boykin argues that the holdings in *Castleman* and the nearly unanimous circuit courts of appeal can and should be ignored, because, "the New York Court of Appeals has held that first degree manslaughter can be committed by an omission, which is not a use of force under New York law." (Defendant Reply Brief at 4). He argues, "Whether [federal] Court agrees or disagrees with the Court of Appeals' construction of New York law is of no moment. As the

15

Supreme Court has long held, 'state courts are the ultimate expositors of state law,' *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975)." *Id.*

Putting to one side the fact that a district court is simply not at liberty to ignore the holdings of her Circuit Court of Appeals or the Supreme Court, this argument fails to persuade, because nothing in this Court's application of the Supreme Court's decision in *Castleman* or the guidance it gleaned from the Second Circuit's summary orders in *Sierra*, *Praddy*, and *Scott* in any way offends the rightful province of the state court to define and interpret its law.

In *Steinberg*, the issue was whether a parent's failure to provide a statutory level of care to a child (an omission) was punishable under its first-degree manslaughter statute, N.Y. Penal Law §§ 125.20(1). The court answered in the affirmative. The very different question before this Court today is whether Boykin's violation of a different statute with different elements—New York's intentional murder statute, N.Y. Penal Law § 125.25(1)—qualifies as a "categorical force crime," so as to satisfy an element of a federal crime, 18 U.S.C. § 924(c). The New York Court of Appeals has never ruled on that precise question, nor has it been asked to do so. There is simply no contradiction between its holding that an act of omission can underlie a manslaughter conviction, and the federal courts' recognition—in the context of interpreting the force clause in federal statutes[5]—that "it is impossible to cause bodily injury without applying force in the common-law sense," *Castleman*, 572 U.S. at 170, and that sometimes includes instances where bodily injury is set in motion by an omission. *Id. See e.g. United States v. Peeples*, 879 F.3d at

---

[5] The "force clause" versus "risk-of-force clause" is implicated in three different statutes: 18 U.S.C. § 924(e) (the Armed Career Criminal Act, as analyzed in *Johnson v. United States*, 135 S. Ct. 2551 (2015)); 18 U.S.C. § 16 (the generic definition of a "crime of violence," as analyzed in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018)); and 18 U.S.C. § 924(c) (the firearm statute at issue in this case, as analyzed in *Davis*)).

16

287. Whether the state court would agree with that characterization—and it might—is of no moment.

Finally, since Boykin was charged with aiding and abetting the murder of Lamont Young as well as with committing it, the language in N.Y. Penal Law § 20.00 is also relevant: "When one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct." *Id.* Assuming arguendo that Boykin's plea was simply to aiding and abetting Young's murder, the first element of aiding and abetting is that the crime the defendant aided and abetted (intentional murder in violation of Penal Law Section 125.25(1)) was committed by someone else. And since the above discussion establishes that a 125.25.(1) murder is a categorical crime of violence, aiding and abetting it is no less a categorical crime of violence.

For these reasons, Boykin's motion to set aside his §924(c) conviction is DENIED.

The Court declines to issue a certificate of appealability because there has been no "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see United States v. Perez*, 129 F.3d 255, 260 (2d Cir. 1997). Further, the Court finds, pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from an order denying Boykin's motion would not be taken in good faith. *See Feliz v. United States*, No. 01-cv-5544, 2002 WL 1964347, at *7 (S.D.N.Y. Aug. 22, 2002).

This constitutes the decision and order of the Court.

Dated: February 18, 2020

_____
Chief Judge

BY ECF TO ALL COUNSEL